IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| MARILYN B. BRANHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:11-cv-27 |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

Plaintiff Marilyn B. Branham ("Branham") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner"), finding her not disabled and therefore ineligible for both supplemental security income ("SSI") and disability insurance benefits ("DIB"), under the Social Security Act ("Act"), 42 U.S.C. §§ 401-433; 1381-1383f.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda and argument of counsel and the applicable law, and conclude that substantial evidence supports the ALJ's decision. As such, I **RECOMMEND DENYING** Branham's motion for summary judgment (Dkt # 13), and **GRANTING** the Commissioner's motion for summary judgment (Dkt # 18).

### I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.

2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Branham failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Branham bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given the claimant's age, education and work experience. See 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983);

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

### Social and Vocational History

Branham was born on July 22, 1972 and was a younger individual on the alleged onset date under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c)(2011). (Administrative Record, hereinafter "R." 21.) Branham's last insured date is December 31, 2007, and thus, she must show that her disability began before that date, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). To receive SSI benefits, Branham must establish that her disability began on or after the date she applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R § 416.501.

Branham has a high school education. (R. 21, 32.) Branham's past relevant work includes working as a cleaner, which is unskilled medium work. (R. 21.) Branham also worked as an envelope stuffer and waitress, which are both unskilled light work. (R. 21, 33.) Branham reported that during the relevant period of alleged disability, she spent much of the time taking care of her children and doing some light chores at her home. (R. 7–9, 172-79, 218-27.)

3

## Claim History

Branham protectively filed for SSI and DIB, claiming that her disability began on August 31, 2007, due to problems with her neck, back, left leg, and heel. (R. 160.) The state agency denied her application at the initial and reconsideration levels of administrative review. (R. 52-56, 64-66.) On March 3, 2011, Administrative Law Judge ("ALJ") Marc Mates held a hearing to consider Branham's disability claim. (R. 13.) Branham was represented by counsel at the hearing, which included testimony from vocational expert Barry Hensley, Ed.D.

On April 25, 2011, the ALJ entered his decision denying Branham's claims for DIB and SSI. (R. 27.) The ALJ found that Branham's degenerative disc disease, nerve irritation in her left lower extremity, and bilateral plantar fasciitis were severe impairments. (R. 15.) Considering these impairments, the ALJ found that Branham retained the RFC to perform light work, except that she (1) cannot push/pull with her left lower extremity more than occasionally; (2) cannot climb ladders/ropes/scaffolds; and (3) must avoid concentrated exposure to temperature extremes, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, and poor ventilation. (R. 17.)

Based upon the testimony from the vocational expert, the ALJ found that Branham can perform her past relevant work as an envelope stuffer and as a waitress. (R. 21.) The ALJ also accepted the testimony of the vocational expert that Branham can perform unskilled light jobs—such as domestic cleaner, cashier, and production inspector—or unskilled sedentary jobs—such as telemarketer, receptionist, and customer service representative—existing in the national economy. (R. 22.) On July 15, 2011, the Appeals Council denied Branham's request for review, and this appeal followed. (R. 1–4.)

# III.

Branham argues that the ALJ erred by 1) improperly dismissing the opinion of her treating physician; 2) discrediting Branham's testimony that she suffers from severe, disabling pain; and, 3) improperly relying upon a hypothetical presented to the vocational expert that was based upon the limitations set forth by the state agency physician.

## **Treating Physician**

Branham first argues that the ALJ erred by giving greater weight to the opinion of the non-treating and non-examining state agency medical expert, Bert Spetzler, M.D., than to Branham's treating physician, William C. Andrews, M.D. In determining Branham's RFC, the ALJ considered Dr. Andrews's opinion, but gave it little weight, finding it inconsistent with the medical evidence of record. (R. 20.) The ALJ gave greater weight to the opinion of Dr. Spetzler, who completed a reconsideration of Branham's residual functional capacity assessment on June 8, 2010.[1] (R. 233-35.)

The opinions of a treating physician should be given controlling weight when they are supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . .

Id.; see also Social Security Ruling ("SSR") 96-2p.

---

[1] The ALJ adopted the assessments of Dr. Spetzler, rather than the initial assessment by another state agency medical consultant, Dr. Surrusco, in March 2010 (R. 192-94, 201-03) because he concluded that Dr. Spetzler had a more complete record to evaluate. (R. 21.)

5

When determining whether the treating physician's opinion is to be given controlling weight, it is appropriate for the ALJ to consider the evidence in support of the opinion, and to determine the opinion's consistency with the record as a whole. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. The ALJ must consider a number of factors regarding the treating physician's opinion, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ is required to give specific reasons for the weight given to the treating physician's medical opinion, which are supported by evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p.

The ALJ's decision to give Dr. Andrews's opinion little weight is supported by substantial evidence. Branham began treatment with the Orthopaedic Center of Central Virginia and in particular, Dr. Andrews, in February 2009 for left knee pain after she fell on ice. (R. 309.) On July 16, 2010, Dr. Andrews completed a Medical Source Statement of Treating Physician. (R. 414-16.) In that statement, Dr. Andrews reported Branham's diagnosis of lumbar disc disease and left peroneal nerve pain and palsy. He indicated that Branham could rarely lift more than ten pounds and that she could not stand, walk, or sit for more than 2 hours in an 8-hour work day. Dr. Andrews also indicated that she could never crawl, climb ladders, or push/pull with her left lower extremity; she could rarely twist, stoop, crouch, kneel, or climb stairs; and that she could only occasionally push or pull with her upper extremities. (R. 414-16.) As the ALJ noted, Dr. Andrews's opinion is not supported by the medical evidence in the record, including

6

radiographic results and stable physical examination findings. (R. 20.) That relevant medical evidence, in chronological order, is set forth below.

Branham was seen at Staunton River Family Physicians on March 19, 2008 by Alan Dansberry, PA-C and Daniel Hey, M.D., complaining of pain in both feet over a long period of time. (R. 282.) Branham was diagnosed with bilateral plantar fasciitis with right great toe tenderness. (R. 282.) She was seen again at Staunton River complaining of plantar fasciitis on August 23, 2008. (R. 280.) Examination revealed no swelling, tenderness in the heel and arch area, and intact sensation. (R. 280.)

On February 3, 2009, Branham fell on ice. (R. 309.) Three days later, on February 6, 2009, she was examined by Dr. McCowen at Orthopaedic Center of Central Virginia. (R. 309.) At that time, Branham reported a history of chronic back pain and complained of back and left lower extremity pain, which she described as constant. (R. 309.) Examination revealed full range of motion and 5/5 strength in the upper and lower extremities. (R. 309.) Branham reported significant pain when she was seen by Dr. Andrews at the Orthopaedic Center of Central Virginia on February 13, 2009. (R. 308.) On February 16, 2009, Branham was seen by David Snover, PA-C for the results of her left knee MRI, which were negative. (R. 306.) At that encounter, Branham presented in a wheelchair, unable to walk and having difficulty with crutches. (R. 306.) An MRI of the left lower extremity was ordered. (R. 306.) That revealed edema and findings consistent with a grade II-III strain. (R. 313.)

Branham followed up with Dr. Andrews of February 19, 2009. Dr. Andrews noted edema, but no significant knee or ankle pathology and a normal neurologic examination in her lower extremity (R. 305.) He stated that her symptoms were already much improved and that

7

she felt much better. (R. 305.) On March 19, 2009, Dr. Andrews noted that Branham still had significant swelling and that her knee was sore but much better. (R. 304.) Dr. Andrews recorded that Branham was developing what he thought was an "early RSD type process." (R. 304.)[2] At a follow-up with Dr. Andrews on May 19, 2009, Branham reported that she was better, but still had good days and bad days with her leg. (R. 303.) Her swelling was still moderate, but much improved. (R. 303.) Dr. Andrews instructed Branham to return as needed. (R. 303.)

Branham returned to Dr. Andrews on October 20, 2009, complaining of left leg irritation in the peroneal nerve distribution. (R. 302.) Her knee was stable, but she reported pain with walking or standing for ten or fifteen minutes. (R. 302.) Dr. Andrews believed that Branham sustained a ligamentous injury to her knee and was now left with residual peroneal nerve symptomatology, which may or may not resolve over time. (R. 302.) At that visit, Branham stated she was not interested in physical therapy due to the cost and because she was able to function and was content to "give this more time." (R. 302.)

On October 30, 2009, Branham was seen at the Free Clinic of Central Virginia where she reported she was seeing Dr. Andrews for her left leg pain but that she wanted a second opinion because he kept "putting her off" and telling her he did not know when she would be better. (R. 341.) Branham returned to Dr. Andrews on January 22, 2010, complaining of significant pain in her knee and down her leg in the peroneal nerve distribution. (R. 301.) Dr. Andrews noted that the left leg pain incapacitated Branham. Dr. Andrews gave Branham an injection of Depo-Medrol, Xylocaine, and Marcaine in the peroneal area of the fibula. (R. 301.) On March 2, 2010, Branham was seen by Marcia M. Cole, PA-C, ATC (who is affiliated with Dr. Andrews),

---

[2] RSD, or "reflex sympathetic dystrophy" is defined as "[a]n abnormal condition marked by pain, sweating, swelling, skin atrophy (withering), and redness or paleness, as a result of a disturbance of the sympathetic nervous system . . . It usually follows an injury to blood vessels or nerves (as in cases of a fracture or severe sprain)". J.E. Schmidt, Attorney's Dictionary of Medicine, Vol. V at R-67 (1999).

8

at which time she reported that the injection did not help and that the pain was worse when she walked, which she did "quite a bit." (R. 318-19.) Branham wore an Aircast on her left ankle, which helped provide support, and denied any current back issues. (R. 318.) An examination revealed 5/5 strength of all major muscle groups in both lower extremities. (R. 318.) Branham was referred to a physical therapist for two visits to work on a home exercise plan. (R. 326-31.) On March 9, 2010, the physical therapist noted Branham walked with an antalgic gait and reported 6–10 out of 10 constant pain in her lower leg. (R. 326-27.) On her second visit on March 12, Branham reported 5/10 pain in her calf. (R. 330.)

On July 16, 2010, Branham was seen by Dr. Andrews with leg pain ad peroneal palsy. Dr. Andrews noted she had significant pain and symptoms that were consistent from exam to exam. (R. 374.) Dr. Andrews indicated that he supported her move to file for disability and completed a Medical Source Statement of Treating Physician that same day. (R. 374, 414-16.)

Additionally, on November 17, 2010, an MRI of Branham's lower lumbar spine was unremarkable except for moderate disc degeneration. (R. 411-12.) Dr. Adam Shimer examined Branham and noted that her physical exam was unremarkable. (R. 412.) She had poor effort with the entirety of her left lower extremity, intact sensation, equal reflexes, and a stable tandem gait. (R. 412.)

Contrary to the disability opinion of Dr. Andrews, Branham's medical records do not suggest that she suffers significant functional limitations. As the ALJ noted, although Branham's medical records document subjective complaints of back and lower left extremity pain, the objective examinations do not demonstrate significantly decreased strength, sensation, or range of motion that would be expected with the degree of limitation alleged. (R. 20.)

9

Further, Dr. Andrews's opinion that Branham suffers from significant functional limitations and is unable to work is contrary to other medical opinion evidence in the record. State Agency medical consultant Richard Surrusco, M.D. reviewed Branham's record[3] on March 10, 2010 and determined that she could occasionally lift 20 pounds and frequently lift 10 pounds. (R. 192.) He also found that she could stand or walk for 2 hours and sit for 6 hours in an 8-hour workday. (R. 193.) Dr. Surrusco found that she was limited in her ability to push or pull with her lower left extremity; could only occasionally climb ramps or stairs, balance, or stoop; could rarely kneel; and that she could never crawl. (R. 193.) Dr. Surrusco also noted she should avoid concentrated exposure to environmental conditions such as extreme temperatures, humidity, wetness, noise, vibration, fumes, odors, dusts, gases, and poor ventilation. (R. 193-94.)

On June 8, 2010, Dr. Spetzler, another state agency medical consultant, completed a reconsideration of Branham's residual functional capacity. In addition to the evidence considered in the initial review by Dr. Surrusco, Dr. Spetzler reviewed updated records sent by Dr. Andrews on June 2, 2010. (R. 229-30.) On reconsideration, Dr. Spetzler's revised assessment differed from Dr. Surrusco's initial assessment in only two ways: 1) he found that Branham could stand or walk for 6 hours, and 2) he found that she could crawl only occasionally. (R. 233-34.)

Further, although the ALJ did not give Dr. Andrews's opinion controlling weight, he did not simply disregard it. The ALJ gave Dr. Andrews's opinion little weight, and instead relied upon the functional assessments completed by Dr. Surrusco and Dr. Spetzler, adopting the limitations indicated by Dr. Spetzler, who had a more complete record to evaluate. (R. 20-21.) The ALJ may use and rely upon evidence from a non-examining or non-treating physician if that

---

[3] The evidence reviewed by Dr. Surrusco included records sent by Dr. Andrews, which were received February 27, 2010. (R. 190-91.)

10

opinion is consistent with the record. Kyle v. Cohen, 449 F.2d 489, 492 (4th Cir. 1971). Dr. Spetzler's functional assessments are supported by the clinical and diagnostic evidence. For the foregoing reasons, I find that there is substantial evidence to support the ALJ's decision not to give Dr. Steven's opinion controlling weight and to provide greater weight to the opinion of Dr. Spetzler.

### Credibility

Branham argues that the ALJ erred by failing to assign substantial credibility to her testimony that she suffers from severe, disabling pain. The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). A review of the record as a whole shows that substantial evidence supports the ALJ's decision to find Branham incredible to the extent her statements concerning the intensity, persistence, and limiting effects of her impairments are inconsistent with her residual functional capacity assessment.

In determining whether a claimant is disabled by pain, the Fourth Circuit mandates a two-step process. Hines v. Barnhart, 453 F.3d 559, 564-66 (4th Cir. 2006). First, the claimant must show, with medically objective evidence, that she suffers from an impairment that could be reasonably expected to cause pain. Id. Once such a showing is made, the claimant may rely exclusively on subjective evidence to "prove the second part of the test, i.e., that [her] pain is so continuous and/or so severe that it prevents [her] from working a full eight hour day." Id. at 565. While objective evidence is not necessary to prove disabling pain, it is still relevant to "evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996).

11

At the administrative hearing and in pain questionnaires completed by Branham in March and May of 2010, Branham reported that she suffers from chronic neck, back, and left leg pain. (R. 33-34, 169, 217.) At the hearing and in Adult Function Reports completed by Branham in March and May of 2010, Branham reported that she can only walk, sit, or stand for 20 minutes at a time and that she cannot lift more than 10 pounds. (R. 38, R. 172-79, 218-27.) She also testified that that she wakes up every 45 to 60 minutes and that she only sleeps 4 to 5 hours each night. (R. 35, 38.) Branham argues that this testimony, along with the opinion of Dr. Andrews, establishes that she suffers from disabling pain so severe that it prevents her from working.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)

The ALJ determined that Branham's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with her residual functional capacity assessment. (R. 18.) The ALJ specifically noted in his decision that the degree of severity alleged was not supported by other evidence of record. (R. 20.) He noted that Branham's treatment has been relatively limited and conservative, that she has not required surgical intervention, and that her records do not show complaints or treatment for pain on or near the alleged onset date of August 31, 2007. (R. 20.) The ALJ also specifically took note of the fact that her left leg pain had significantly improved

by May 2009—after a fall in February 2009. (R. 20, 303-09.) He also noted her statement that she was able to function when declining physical therapy in October 2009. (R. 20, 302.) Ultimately, the ALJ noted that repeated physical examinations failed to reveal significantly decreased strength, sensation, or range of motion on a consistent basis, as would be expected with the significant functional limitations alleged by Branham. (R. 20.) Finally, the ALJ questioned whether the fact that Branham is not working is solely the result of her impairments, given her sporadic and limited work history even before her alleged disability onset date. (R. 20.)

Substantial evidence in the record supports the ALJ's determination that Branham's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not credible to the extent that it was inconsistent with her residual functional capacity assessment. "[A] claimant's allegations about her pain …need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id. (citing 20 C.F.R. §§ 416.929(c)(4) & 404.1529(c)(4)). Branham's medical records do not reflect debilitating pain and significant functional limitations. There is no indication of significantly decreased strength and a November 18, 2010 physical examination was unremarkable and revealed no loss of sensation and a stable tandem gait. (R. 412.)

The ALJ does not assert that Branham is pain free. On the contrary, the ALJ recognized that Branham suffers from severe conditions that greatly limit her ability to function. The issue, however, is not whether Branham has physical impairments or experiences symptoms, but whether those impairments and symptoms prevent her from performing past relevant work as an

13

envelope stuffer and as a waitress, or other unskilled light or unskilled sedentary work. The ALJ accounted for the limitations posed by Branham's impairments by eliminating jobs that would require her to push or pull with her left lower extremity more than occasionally, that would require her to climb ladders, ropes or scaffolds, or that would involve concentrated exposure to temperature extremes, wetness, humidity, noise, vibration, fumes, odors, dust, gases, and poor ventilation. (R. 17.)

Branham's medical records do not provide an evidentiary basis to corroborate her subjective allegations that her pain is so severe that she cannot perform past relevant work or a range of light work or sedentary jobs existing in the national economy. I have already addressed the ALJ's finding regarding the credibility of the opinion of Dr. Andrews. The opinion of Dr. Spetzler, which was given greater weight by the ALJ, does not support Branham's subjective allegations.

## Vocational Expert

Branham also contends that the hypothetical presented to the vocational expert was improper because it was based on the limitations set forth by Dr. Spetzler, rather than those set forth by Dr. Andrews. I have already concluded that substantial evidence supported the ALJ's decision to give Dr. Andrews's opinion lesser weight and to afford considerable weight to the opinions of the state agency examiner, Dr. Spetzler. The hypothetical presented to the vocational expert correctly reflected the conclusions of the Dr. Spetzler and the ALJ's assessment of Branham's physical and mental impairments as set forth in the RFC. I conclude, therefore, that substantial evidence supports the hypothetical questions presented to the vocational expert.

## CONCLUSION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Branham is totally free from any distress. The objective medical record simply fails to document the existence of any physical and/or mental conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Branham's claim for benefits and in determining that her impairments would not prevent her from performing any work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, I recommend that the Commissioner's decision be affirmed and the defendant's motion for summary judgment be **GRANTED**; and Branham's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 19, 2013

*/s/ Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge